[No. 15064.   Department One.   March 31, 1919.]

SARAH ENRIGHT, *Appellant*, v. ADA STONE BRINGGOLD
*et al., Respondents.*[1]

LIBEL AND SLANDER—LIABILITY—PUBLICATION. In a civil action
for slander, the publication must be shown by proof that the slan-
derous words were spoken in the presence and hearing of a third
person.

SAME—PUBLICATION OF SLANDER—STATUTES. Rem. Code, § 2433,
defining criminal slander and requiring that the words be spoken
in the presence or hearing of a third person, has no application to a
civil action for damages.

SAME (30)—ACTIONS—ISSUES, PROOF AND VARIANCE. A complaint
for slander in telling the manager of a hotel that plaintiff was a
thief and had stolen silverware from the hotel is not sustained by
proof that defendant asked the manager if he had lost any silver-
ware, and that defendant had seen some of the hotel silverware
in plaintiff's closet; since the words proven must substantially cor-
respond with the words charged.

Appeal from a judgment of the superior court for
Spokane county, Webster, J., entered July 18, 1917,
dismissing an action for slander, upon granting a non-
suit. Affirmed.

*W. B. Mitchell* (*Skuse & Morrill,* of counsel), for
appellant.

*Turner, Nuzum & Nuzum,* for respondents.

TOLMAN, J.—This is an action for slander. At the
close of the plaintiff's case, the motion of the defend-
ant Ada Stone Bringgold for a nonsuit was granted
by the trial court; and afterwards, by direction of
this court, *State ex rel. Stone v. Superior Court,* 97
Wash. 172, 166 Pac. 69, a judgment of dismissal as
to her was entered. This appeal is prosecuted for
the purpose of reviewing the action of the trial court
in granting the motion for a nonsuit.

[1]Reported in 179 Pac. 844.

The fourth amended complaint, upon which the case went to trial, charges a conspiracy between the defendants to manufacture or procure testimony in a pending divorce case; that the plaintiff exposed the plan and purpose to the person sought to be injured thereby; and that, having discovered this fact, the defendants,

"caused the said Henry Madigan to visit the Lever Hotel and proceed to the room of the plaintiff, where he knocked upon the plaintiff's door and kept knocking, and in an angry overbearing voice within the hearing of the help and guests of said hotel, said the following, to-wit: 'Open up this door, I know you are in the room' (meaning the plaintiff), and kept this up till the plaintiff was forced to open the door and allow him to come in, in order to prevent a scene; upon the defendant Madigan's entrance he said, 'This is a hell of a fix you got Ada Stone Bringgold and myself in, the first thing you know we will all be in jail, turn over that ring and money to me,' plaintiff refusing, the said Henry Madigan further falsely said in order to intimidate and browbeat the plaintiff and force plaintiff to give up the ring, 'Why woman, Ada Stone Bringgold has already obtained a warrant for your arrest on the charge of obtaining money and property under false pretense and the officers are on their way here now with it,' thereby accusing the plaintiff of the crime of obtaining money and property under false pretense."

And again, charging that defendants conspired together to injure the plaintiff, it is alleged that they,

"caused the said Henry Madigan to call the plaintiff up on the phone at her place of employment, the Whitehouse Co., and within the hearing of the phone operators and employers of the store, the said Henry Madigan said, 'What about that money, are you going to return it?' and further said, 'I have made a living promise to send you over the road for exposing us, and I am going to stand by it', and thereby imputing

the plaintiff was going to be sent to prison for the commitment of some crime and falsely exposing the plaintiff to the store of being a criminal and causing the plaintiff to lose her employment."

And also, in furtherance of such conspiracy, the said defendant Henry Madigan,

"wilfully, falsely, maliciously, unscrupulously and with a deliberate intention of falsely injuring the plaintiff in every way possible, told the officials of the Davenport Hotel, who are personal friends of the manager of said Whitehouse Co. and divers others, 'Sarah Enright stole a diamond ring from Ada Stone Bringgold, and I went to her (meaning Sarah Enright) room at the Lever Hotel in her absence and found it there, she (meaning Sarah Enright) has stolen silverware from your hotel (meaning the Davenport) and has a lot of the goods concealed in her room (meaning Sarah Enright's room) and I (meaning Madigan) saw it there when I got the ring,' thereby imputing that the plaintiff was a thief and had stolen a diamond ring from the defendant Ada Stone Bringgold, and silverware from the Davenport Hotel and had the stolen goods concealed in her room or possession at that time."

The evidence to support these allegations was chiefly the testimony of the plaintiff, appellant here, who, as to the first charge, said that Madigan came to her room in the Lever Hotel, and knocking, said:

"Open the door, I know you are in there . . . open the door I know you are there . . . When I opened the door he says, 'this is a hell of a fix you have got Mrs. Bringgold and I into, you will get us all in jail, I want you to turn over that ring and money to me."

There was produced also the testimony of an employee of the hotel, who was asked if there were people in the adjoining rooms, and said: "People right opposite the hall, the other side of the hall, opposite

Mrs. Enright's room and the chambermaid was on the floor that morning." On cross-examination, when asked if anybody heard the conversation between Madigan and the plaintiff, he answered: "I can't say that." This, with an admission by Madigan that there was a man in the hall near the door when he came out of the plaintiff's room, is the only evidence of publication.

As to the words alleged to have been spoken over the telephone, plaintiff testified that there were people near her when she received the message, but stated that she had never inquired as to whether any of them had overheard the conversation.

It is, we think, the universal rule that proof of the publication of the defamatory words is essential to the maintenance of an action for slander, though courts may differ somewhat as to what constitutes publication. We think the great weight of authority is to the effect that the words alleged to be slanderous must be spoken in the presence and within the hearing of a third person or persons, and some courts hold that such third person must be shown to have heard and understood the slanderous utterances. *Cameron v. Cameron,* 162 Mo. App. 110, 144 S. W. 171; *Massee v. Williams,* 207 Fed. 222; *Traylor v. White,* 185 Mo. App. 325, 170 S. W. 412; *Penry v. Dozier,* 161 Ala. 292, 49 South. 909; *Spaits v. Poundstone,* 87 Ind. 522, 44 Am. Rep. 773; *Mielenz v. Quasdorf,* 68 Iowa 726, 28 N. W. 41.

But appellant seems to rely upon our criminal code, § 2433, Rem. Code. It is sufficient to say that the section referred to attempts only to define a criminal offense, and has no relation whatever to a civil action for damages. But even so, the words complained of here were not shown to have been spoken

"in the presence or hearing of any person other than the female slandered," as that section requires. Adhering, then, to the general rule applied in civil cases, it requires no argument to show that, as to the two charges just discussed, there was no sufficient proof of publication, and the trial court was clearly right in granting the nonsuit as to them.

The third charge, in substance, is that the defendant Madigan told the officials of the Davenport Hotel that Sarah Enright stole a diamond ring from Ada Stone Bringgold, and that "she (meaning Sarah Enright) has stolen silverware from your hotel." While the proof is that Madigan asked the manager of the hotel if they had lost any silverware, and then said that he had been to Mrs. Enright's room for the purpose of getting a ring which belonged to a client, and that he had there seen some of the Davenport silverware in a closet or alcove in her apartment. We cannot see in this testimony anything which would justify the jury in finding that Madigan had thereby charged plaintiff with being a thief, either with respect to the ring or the silverware. There was nothing in the language as proved which could have justified the jury in finding that Madigan intended to convey the impression that plaintiff had received either the ring or silverware with guilty intent or knowledge. The gist of the charge is that Madigan, in effect, told the manager of the Davenport Hotel that plaintiff was a thief, and the proof in no way tends to support that charge. If we apply the stricter rule that sufficient of the actual words charged must be proven so as to sustain the charge, it still more clearly appears that the proof was wholly insufficient. In *Bleitz v. Carton*, 49 Wash. 545, 95 Pac. 1099, the words charged in the complaint were: "He has another wife

back east, and a wife and child here." And the pleader drew the conclusion therefrom that it was intended to charge the person referred to with the crime of bigamy. The proof showed the words spoken to have been: "He has a wife and child back east and is living with another woman here." This court then said, speaking through the late Mr. Justice Crow:

"In actions for libel and slander the general rule as to variance is that, if the allegations of the pleading and the proof do not strictly correspond, the plaintiff cannot recover. This rule, which was rigidly enforced in the earlier cases, has been somewhat relaxed by later adjudications, so that proof is now held to be sufficient if the charge of the complaint is substantially sustained, although the proof made does not in every minute particular correspond with the words alleged. 25 Cyc. 484. After a careful examination of numerous authorities, we have been unable to find any cases in which the general rule has been so far relaxed as to hold that an allegation of the speaking of words charging one crime or misdemeanor is sustained by proof of the speaking of words charging, or tending to charge, a different crime or misdemeanor, or that such a failure to prove the words alleged would not constitute a fatal variance."

The general rule is that the words proven must substantially or in substance correspond with the words charged. *Parsons v. Henry,* 177 Mo. App. 329, 164 S. W. 241; *Haub v. Friermuth,* 1 Cal. App. 556, 82 Pac. 571; *Ransom v. McCurley,* 140 Ill. 626, 31 N. E. 119; *Irish-American Bank v. Bader,* 59 Minn. 329, 61 N. W. 328; *Conran v. Fenn,* 159 Mo. App. 664, 140 S. W. 82; *Kunz v. Hartwig,* 151 Mo. App. 94, 131 S. W. 721; *Fleet v. Tichenor,* 156 Cal. 343, 104 Pac. 458, 34 L. R. A. (N. S.) 323.

Since for the reasons already stated, it is apparent that the motion for nonsuit was properly granted, we need not discuss the question raised as to whether or

not there was any evidence sufficient to go to the jury on the question of a conspiracy.

Judgment affirmed.

CHADWICK, C. J., MAIN, MACKINTOSH, and MITCHELL, JJ., concur.